J. S33044/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, :    IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
            Appellant      :
                                      :
             v.                 :           No. 413 MDA 2019
                                      :
NATHANIEL HOMM GONZALEZ     :

Appeal from the Order Entered February 6, 2019,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0003024-2018

BEFORE: LAZARUS, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 09, 2019**

The Commonwealth appeals from the February 6, 2019 order entered

by the Court of Common Pleas of Berks County granting Nathaniel Homm

Gonzalez's ("appellee") motion to suppress evidence. After careful review, we

affirm.

The trial court set forth the following factual history:

> At approximately 6:30 P.M. on June 26, 2018,
> West Reading Police Officer Chad Marks was
> conducting a routine patrol in the area of
> South Seventh Avenue and Spruce Street in the
> Borough of West Reading, Berks County.
> Officer Marks observed a silver Honda Accord drive
> past him with fairly dark tint on the rear window that
> was peeling. Officer Marks could see inside the
> vehicle through the tinted rear window. He began
> following the vehicle, during which time he observed
> a "rope-type of configuration" hanging from the
> rearview mirror as well as a flag [that] he believes was
> "suctioned to the windshield." . . . Based on his

observation of the rope and flag, Officer Marks testified that he "was concerned there could be a line of sight issue." Officer Marks stated that the rope was "partially in front of the area the driver would need to look to make a right-hand turn," and he believed the flag would impair the driver's view. After driving behind the vehicle FOR two or three blocks he initiated a traffic stop, "to advise the driver about those items." On cross[-]examination, he stated that the rear window tint was also a reason for stopping the vehicle, and stated, "I believe [the tint] would be considered illegal." He intended only to provide a warning to the driver, not a citation.

Officer Marks exited his patrol car and approached the driver's side of the Accord. The vehicle was driven by Edwin Gonzalez ([appellee's] brother) and [appellee] was in the front passenger seat. The vehicle was owned by [appellee's] friend. Officer Marks explained why he stopped the vehicle, and asked the driver for his identification and where he was travelling. [Appellee] was visibly nervous during the traffic stop. His stomach was pulsating, and he looked sick and like he might cry. Officer Marks asked [appellee] if he was okay, and [appellee] said that he was. Officer Marks then asked the driver if there were any guns or drugs in the car that he should be aware of. At that, [appellee] looked at the center console and said, "It's in there." [Appellee] then removed drugs from the center console and handed them to Officer Marks.

[Appellee] was charged with possession with intent to deliver a controlled substance and possession of a controlled substance.[1] The driver was not charged with or issued a written warning for violating 75 Pa.C.S.[A.] § 4524 relating to windshield obstructions and window tint.

. . . .

Officer Marks testified that the "rope type of configuration" was "hard to describe" and that he did

---

[1] 35 P.S. § 780-113(a)(30) and (16), respectively.

not know what, exactly, it was. He offered the following descriptions of the rope: it hung down two to three inches from the rearview mirror; it was a single, small rope that was thicker than a shoe string; it was "maybe not" as wide as [a] parking pass, and overall was no bigger than a parking pass. Edwin Gonzalez, the driver of the vehicle, described the rope as "some type of knot thing" hanging from the rearview mirror.

Officer Marks testified that the flag was approximately five by five inches and was located "one-half to three-quarters" of the way up the front windshield on the passenger side, near the "A" pillar. He believes it was the flag of Puerto Rico. Officer Marks indicated that the flag was "suctioned to the window" and "suction-cupped to the front windshield."

Trial court findings of fact & conclusions of law, 2/6/19 at 1-3 (headings and endnotes omitted).

On September 28, 2018, appellee filed an **omnibus** pretrial motion in which he sought to suppress evidence from the traffic stop. The trial court held a hearing on November 7, 2018, and entered an order granting appellee's motion on February 6, 2019.

The Commonwealth filed a notice of appeal to this court on March 8, 2019. In its notice of appeal, the Commonwealth certified that the trial court's order either terminated or substantially handicapped its ability to prosecute this case. **See Commonwealth v. James**, 69 A.3d 180, 185 (Pa. 2013), citing **Commonwealth v. Dugger**, 486 A.2d 382, 386 (Pa. 1985). The trial court did not order the Commonwealth to file a concise statement of errors complained of on appeal. On March 12, 2019, the trial court filed an opinion

pursuant to Pa.R.A.P. 1925(a), in which it incorporated its February 6, 2019 statement of findings of fact and conclusions of law.[2]

The Commonwealth raises the following issue for our review:

> Did the trial court err in suppressing evidence where Officer Marks had probable cause to conduct a traffic stop for a violation of the Motor Vehicle Code, specifically windshield obstructions under 75 Pa.C.S.A. § 4524?

Commonwealth's brief at 4 (full capitalization omitted).

Our standard of review for Commonwealth appeals of orders granting suppression motions is as follows:

> When the Commonwealth appeals a suppression order, we consider only the evidence from [appellee's] witnesses together with the portion of the Commonwealth's evidence which is uncontroverted. Our standard of review is limited to determining whether the suppression court's factual findings are supported by the record, but we exercise *de novo* review over the suppression court's conclusions of law. Further, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Harris*, 176 A.3d 1009, 1018 (Pa.Super. 2017) (quotation marks and citations omitted).

---

[2] Appellee did not file a brief with this court.

Here, the Commonwealth contends that Officer Marks possessed the requisite reasonable suspicion required to initiate a traffic stop. (Commonwealth's brief at 10.) For the following reasons, we disagree.

We first turn to the rope configuration that was affixed to the rear view mirror. Objects hanging from the rear view mirror are regulated by Section 4524(c) of the Motor Vehicle Code, which provides as follows:

> **(c)** **Other obstruction.--**No person shall drive any motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.

75 Pa.C.S.A. § 4524(c).

Our supreme court held that conclusory statements by police officers that objects hanging from a rearview mirror obstruct a driver's view are "insufficient to allow the suppression court to assess the reasonableness of the officer's belief that a [driver] was obstructed, let alone **materially** obstructed, as the statute requires." *Commonwealth v. Holmes*, 14 A.3d 89, 98 (Pa. 2011) (emphasis in original), citing *Terry v. Ohio*, 392 U.S. 1, 12, 22 (1968). Rather, the Commonwealth must produce evidence in such cases that a **material** obstruction was present.

Otherwise, as noted by our supreme court,

> there are myriad objects which drivers commonly hang from their rearview mirrors. Air fresheners; parking placards; mortarboard tassels; crosses; rosary beads; medallions of St. Christopher, the

patron saint of travel; and rabbits' feet are but a few. It is not illegal for a driver to hang such items from his or her rearview mirror, so long as the items do not materially obstruct the driver's view. The legislature could have written Section 4524(c) to prohibit a driver from hanging any object from the vehicle's rearview mirror, or it could have prohibited hanging objects that obstruct a driver's view to any degree, but it did not; rather, it prohibited only material obstructions. Were this Court to conclude that an officer's bare testimony that he saw an object hanging from a rearview mirror which obstructed the driver's view, without any additional testimony or other evidence supporting the officer's conclusion that the object materially obstructed the driver's view, was sufficient to demonstrate reasonable suspicion to constitutionally support the intrusion of a vehicle stop, we would obviate the suppression court's role in ensuring there is an objectively reasonable basis for the vehicle stop, and expose every law-abiding motorist who hangs an object from his or her rearview mirror to a potentially unwarranted intrusion. ***See Terry***.

***Holmes***, 14 A.3d at 98-99.

Here, Officer Marks' testimony was insufficient to support the conclusion that the object materially obstructed the driver's view. The record reflects that Officers Marks' testimony about any potential obstruction caused by the rope configuration is limited to, "I could see that this was partially in front of, you know, where the driver would need to look to the right of him." (Notes of testimony, 11/7/18 at 7.) Accordingly, we find that the trial court's factual findings are supported by the record and that the trial court did not err when it concluded that Officer Marks' observation of the rope configuration hanging

from the rearview mirror did not provide him with the requisite reasonable suspicion required to initiate a traffic stop.

We next turn to the flag Officer Marks observed attached to the windshield. Applying the same standard our supreme court used in **Holmes** to address Section 4524(c), we find that Officer Marks did not possess reasonable suspicion to initiate a traffic stop for a violation of Section 4524(a), which provides, in relevant part:

> **(a) Obstruction on front windshield.--**No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon the front windshield which materially obstructs, obscures or impairs the driver's clear view of the highway or any intersecting highway except an inspection certificate . . . .

75 Pa.C.S.A. § 4524(a).

Here, the trial court made the following determination pertaining to the flag:

> The evidence presented at the suppression hearing was not sufficient to allow [the trial court] to fully, independently assess whether [Officer Marks'] suspicion was reasonable absent additional evidence of the size of the windshield, whether the flag was suctioned directly and securely to the windshield or was dangling and swaying from a hook, the distance between the "A" pillar and the flag, the actual size of the flag[Endnote viii], or whether the flag was transparent or cloth.
>
>> [Endnote viii] The [trial] court recognizes that Officer Mark[s'] testimony that the flag was 5x5 inches was an approximation, but it is not convinced that the flag was square as opposed to the

> traditional rectangular shape (3x5 or 4x6).

Trial court findings of fact & conclusions of law, 2/6/19 at 6.

We also note that Officer Marks did not provide any testimony as to whether the flag materially obstructed the driver's view. Rather, he provided the following testimony:

> Well, [the flag,] amongst the other things, drew my attention because I was concerned that there would be a line-of-sight issue. Obviously, we have four-way intersections in the Borough and we've had a lot of accidents because of people having things hanging from their mirrors and windshields and they're unable to see correctly.

Notes of testimony, 11/7/18 at 9. Based on the evidence of record, we find that the trial court did not err when it concluded that Officer Marks' observation of the flag affixed to the windshield did not provide him with the reasonable suspicion required to initiate a traffic stop.

Finally, we turn to the tint observed by Officer Marks in the rear window. Window tint is regulated by Section 4524(e) of the Motor Vehicle Code, which provides, in relevant part: "No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e).[3]

---

[3] 75 Pa.C.S.A. § 4524(b) addresses obstructions on side and rear windows. This subsection does not reference rear window tint.

At the suppression hearing, Officer Marks testified that he observed a "fairly dark tint" on the rear window of the car that was starting to peel. (Notes of testimony, 11/7/18 at 6.) Officer Marks further testified that he could see through the rear window in order to observe the rope configuration and flag. (*Id.* at 5-6; 19.) Further, Officer Marks stated that the tint was not the sole reason that he initiated the traffic stop, but that it could be a reason to do so. (*Id.* at 20.)

Based on the plain language of the statute, we find that the trial court's legal conclusions are free of legal error, as the tint on the rear window did not provide Officer Marks with the requisite reasonable suspicion required to initiate a traffic stop. Indeed, the statute only regulates the use of tint on windshields, side wings, or side windows of vehicles. *See* 75 Pa.C.S.A. § 4524(e). Moreover, even if Section 4524(e) regulated tint on rear windows, Officer Marks still would not possess reasonable suspicion to initiate a traffic stop, as he testified that he was able to see through the rear window— indicating that the tint on the rear window was in compliance with the Motor Vehicle Code. *See id.*

Accordingly, we find that the trial court did not err when it granted appellee's motion to suppress evidence.

J. S33044/19

Order affirmed.


Ott, J. joins in this Memorandum.

Lazarus, J. concurs in the result.



Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2019