J-A19004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :            PENNSYLVANIA
                                  :
                v.                   :
                                  :
                                  :
BLAZE COREY GOSS              :
                                  :
           Appellant           :     No. 1730 MDA 2023

Appeal from the Judgment of Sentence Entered December 1, 2023
In the Court of Common Pleas of Mifflin County
Criminal Division at No(s): CP-44-CR-0000031-2023

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:        **FILED: NOVEMBER 25, 2024**

    Blaze Corey Goss appeals from the judgment of sentence entered on December 1, 2023, for his convictions of driving under influence of alcohol or controlled substance ("DUI") and driving while operating privilege is suspended or revoked.[1] Goss challenges the trial court's denial of his motion to suppress evidence. We affirm.

    We glean the following factual history from the record.[2] On September 23, 2022, at approximately 1:45 in the morning, MaKayla Haley called 911 to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 1543(b)(1)(i), respectively.

[2] We note the trial court failed to issue its findings of fact as required by Rule 581(I). **See** Pa.R.Crim.P. 581(I) ("At the conclusion of the hearing, the judge
*(Footnote Continued Next Page)*

report a suspicious vehicle. The 911 dispatcher informed Officer Ryan Wagner about the call. Specifically, Officer Wagner was informed that a red Ford F-250 pickup truck (hereinafter "pickup truck" or "truck") was driving slowly in Haley's neighborhood. The pickup truck stopped at Haley's house and other houses. Haley saw bicycles and other items in the bed of the pickup truck. The last reported location of the pickup truck was in the alleyway behind Haley's house.

Officer Wagner proceeded to the area around Haley's house to try to locate the pickup truck. Officer Wagner saw a pickup truck driving slowly and approached it. Officer Wagner initially drove by the pickup truck and observed the bed of the truck contained children's bicycles and other items. Officer Wagner turned around to get behind the pickup truck. When Officer Wagner was behind the pickup truck, he noticed a construction-type road sign in the bed of the truck as well. Officer Wagner suspected a theft was occurring, so he conducted a traffic stop.

Upon speaking with Goss, the driver and sole occupant of the vehicle, Officer Wagner noticed signs of intoxication that ultimately led to Goss' arrest for DUI and related charges.

---

shall enter on the record a statement of findings of fact and conclusions of law … ."). We commend the trial court for issuing its conclusions of law but remind the trial court of its duty to issue both its findings of fact and conclusions of law.

Goss filed a motion to suppress the stop of his pickup truck, asserting Officer Wagner did not have reasonable suspicion for an investigative detention. The court held a hearing on the motion on May 11, 2023. Officer Wagner testified to his experience as a police officer, including investigations of thefts, the residential area of Haley's neighborhood and location of the stop, and the above-noted facts. At the conclusion of the hearing, the court took the matter under advisement. The court denied Goss' suppression motion on August 1, 2023, in a two-page order.

On September 14, 2023, the parties agreed to conduct a stipulated bench trial, and the court found Goss guilty. The court sentenced Goss on December 1, 2023.[3] Goss filed a timely appeal and complied with the court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Goss raises one issue for our review:

Did the [t]rial [c]ourt err in denying [Goss'] motion to suppress evidence after concluding that the totality of the circumstances provided [Officer] Ryan Wagner with sufficient reasonable suspicion of criminal activity, which would justify an investigatory detention in the form of a traffic stop?

Appellant's Brief, at 4 (suggested answer omitted).

Our scope and standard of review is well-established:

In reviewing an order that denied a motion to suppress, an appellate court must determine whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the

---

[3] Neither the September 14 nor December 1, 2023, transcripts are part of the certified record.

Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Malloy**, 257 A.3d 142, 147 (Pa. Super. 2021) (brackets, ellipsis, and citation omitted).

There are three forms of police-citizen interactions: a mere encounter, an investigative detention, and a custodial detention. **See Commonwealth v. Jefferson**, 256 A.3d 1242, 1247 (Pa. Super. 2021) (*en banc*). Both Goss and the Commonwealth agree the interaction on September 23, 2022, was an investigative detention. **See** Appellant's Brief, at 9; Appellee's Brief, at 4. Therefore, Officer Wagner was required to possess reasonable suspicion before he could stop Goss. **See Commonwealth v. Barber**, 889 A.2d 587, 593 (Pa. Super. 2005).

The appellate courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. To meet this standard, the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot.

To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens. Naturally, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. This Court has examined the requirements surrounding reasonable suspicion for automobile stops emanating from information provided by a tipster and has explained:

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the totality of the circumstances — the whole picture, that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

> When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. However, a tip from an informer known to the police may carry enough indicia of reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.

Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, where an unknown informant faces no such risk.

> When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances.

- 5 -

> The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Id.* at 593-594 (quotation marks and citations omitted). Furthermore, police officers are permitted to rely on their training and experience, and "courts must [] afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention."

*Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011) (citations omitted).

Here, an identified citizen called 911 to report a suspicious truck that stopped at her house, was driving slowly, and was stopping at other houses. *See* N.T. Omnibus Pretrial Motion, 5/11/23, at 9-10. The citizen further noted there were bicycles and other items in the bed of the truck. *See id.* This call was at approximately 1:45 in the morning. *See id.* at 10. Officer Wagner proceeded to the area to search for the truck. *See id.* at 14. Officer Wagner described the area as dense residential, where the homes have small yards that face the alleyway the truck was last seen driving down slowly. *See id.* at 10-11. Officer Wagner noted the alleyway has easy access to the residents' backyards and was concerned the truck was involved in an on-going theft. *See id.* at 12-13. Officer Wagner knew from his training and experience as a police officer, thefts often occur at night while the residents are sleeping. *See id.* at 8-9, 17. Officer Wagner found the truck, confirmed it matched the description given by the 911 caller when he drove by it, saw the children's

bicycles in the bed, and then turned around, observed the truck driving slowly, and conducted a traffic stop to investigate. **See id.** at 14.

Goss points to several innocent explanations for his actions that night. **See** Appellant's Brief, at 14-15 (suggesting Goss was "having difficulty finding a particular house"; may have been driving for Uber or Lyft; or may have been hooking up with someone through Tinder or Grindr). As we have previously found:

> Of course, one can conceive of innocent explanations for each one of these facts. Yet, reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further. Rather, the test is what it purports to be — it requires a *suspicion* of criminal conduct that is reasonable based upon the facts of the matter.

**Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa. Super. 2014) (citation and ellipsis omitted, emphasis in original).

The known citizen's information was reliable, as she observed the truck herself.[4] **See Barber**, 889 A.2d at 594. She described the truck in detail to 911, who in turn provided the information to Officer Wagner. Officer Wagner confirmed it was the same truck and observed the truck driving slowly before he conducted the traffic stop. Officer Wagner was able to point to specific and articulable facts, given with the weight of his experience that thefts are more

---

[4] We note the 911 caller was present and prepared to testify at the omnibus pretrial motion hearing, but Goss' counsel objected to her testimony, and the Commonwealth chose to present only Officer Wagner. **See** N.T. Omnibus Pretrial Motion, 5/11/23, at 4-7.

frequent at night, that collectively gave rise to reasonable suspicion criminal activity was occurring. *See* N.T. Omnibus Pretrial Motion, 5/11/23, at 8-9; *Holmes*, 14 A.3d at 95. Officer Wagner's suspicion of criminal conduct was reasonable. *See Davis*, 102 A.3d at 1000. We find no error in the trial court's order denying suppression and affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/25/2024