J-A27003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JEFFREY STEVEN CULVER | No. 55 EDA 2016 |

Appeal from the Order November 19, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002949-2015

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 10, 2017**

Appellant, the Commonwealth of Pennsylvania, appeals from the order granting appellee, Jeffrey Steven Culver's, motion to suppress. The Commonwealth argues that the suppression court erred in concluding that the Pennsylvania State Trooper who arrested Culver lacked probable cause to initiate a traffic stop. After careful review, we conclude that the suppression court's factual findings are supported by the record, and further, that the suppression court did not commit an error of law or abuse its discretion in ordering the evidence suppressed. We therefore affirm.

At the suppression hearing, the Commonwealth presented the testimony of Pennsylvania State Police Trooper Jason Zachariah. Trooper

_____

[*] Former Justice specially assigned to the Superior Court.

Zachariah testified that he was travelling southbound on Route 1 when he noticed Culver's vehicle at the intersection of Route 1 and State Farm Road. **See** N.T., Suppression Hearing, 9/18/15, at 8-9. Culver was in the left lane of northbound Route 1 with his left turn signal activated. **See id**., at 9.

Concerned that the vehicle would make a left turn despite the traffic sign prohibiting such turns, Trooper Zachariah pulled over to the right side of southbound Route 1. **See id**. From his position south of the intersection, Trooper Zachariah watched as Culver proceeded to execute a u-turn onto Route 1 southbound. **See id**. Trooper Zachariah testified that after executing the u-turn, Culver proceeded from the right lane to the far left lane of Route 1 without utilizing his left turn signal. **See id**., at 10.

Culver proceeded to the intersection of Route 1 and Route 202, staying in the far left turn only lane. **See id**., at 10-11. As Culver approached the intersection, Trooper Zachariah testified that Culver activated his right turn signal and crossed over solid white lines separating the lanes of travel to the far right turn only lane. **See id**., at 11-12. Culver turned onto Route 202 northbound. **See id**., at 13. Trooper Zachariah followed him, and pulled Culver over shortly thereafter. **See id**.

Trooper Zachariah's affidavit of probable cause contains the following summary of the incident:

> I was on routine patrol in the area of SR0001 north at State Farm Dr., …, when I observed [Culver's vehicle] cross the center lane line and not drive as close as practical to the right curb. I then observed the vehicle make an illegal U-turn at State [F]arm

drive. I then observed the vehicle move into the left lane without signaling and then make a right turn onto SR 0202 from the left lane without signaling. I then activated my emergency lights and stopped the vehicle at SR0202 just north of SR0001.

Affidavit of Probable Cause, 1/19/15, at 1.

At the preliminary hearing in this case, Trooper Zachariah testified that he was travelling northbound on Route 1 behind Culver when he observed Culver move from the center lane to the left lane of Route 1 without signaling. *See* N.T., Preliminary Hearing, 5/7/15, at 15-16. Trooper Zachariah testified that he followed Culver through the u-turn onto Route 1 southbound. *See id*., at 16.

After following Culver through the u-turn, Trooper Zachariah testified that he observed Culver move from the center lane of northbound Route 1 to the far left lane without activating his turn signal. *See id*., at 17. Culver then crossed over to the far right hand lane to turn onto Route 202 northbound. *See id*. Trooper Zachariah testified that Culver did not utilize his right turn signal while moving from the far left lane to the far right lane. *See id*., at 18.

Trooper Zachariah's patrol car was equipped with a Mobile Vehicle Recorder. The Commonwealth made a copy of the MVR recording of the incident a part of the record at the suppression hearing. The MVR recording reveals that Trooper Zachariah was travelling southbound on Route 1 when he passed Culver's vehicle at the intersection of State Farm Road. After several seconds, Trooper Zachariah pulled his vehicle to the right shoulder.

The MVR recording does not capture Culver's u-turn, or its immediate aftermath. When Culver's vehicle next appears in the recording, it is in the far left lane of Route 1 southbound. Culver activates his right turn signal, and proceeds to cross to the far right lane and turn onto Route 202 northbound.

After reviewing the MVR recording, the suppression court granted Culver's suppression motion. The Commonwealth filed a timely notice of appeal, which it later amended to include a Pa.R.A.P. Rule 311(d) certification. The suppression court filed an opinion and attached its findings of fact and conclusions of law.

The Commonwealth contends that the suppression court erred as a matter of law in granting Culver's motion to suppress. We review such a claim pursuant to the following standards.

> The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based upon a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is de novo. However, in determining whether the suppression court properly denied [or affirmed] a suppression motion, we consider whether the record supports the court's factual findings. If so, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Holmes*, 14 A.3d 89, 94 (Pa. 2011) (citations omitted).

After a thorough review of the record, including the MVR recording, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Gregory M. Mallon, we conclude that the Commonwealth is not

entitled to relief. **See** Suppression Court Opinion, filed April 28, 2016, at 1-11. Accordingly, we affirm on the basis of the suppression court's opinion.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2017

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | NO.        2949-15 |
| V. | |
| JEFFREY CULVER | |

## OPINION

Mallon, J.                                                          Filed: 4/28/16

### I.  FACTUAL AND PROCEDURAL HISTORY

The Defendant, Jeffrey Culver, was charged with Driving under the Influence of a Controlled Substance and related offenses following a traffic stop that occurred in Concord Township in Delaware County, Pennsylvania on August 14, 2014. The case was bound over for trial, and on August 3, 2015, the Defendant, through counsel, filed an Omnibus Pretrial Motion which included a Motion to Suppress. A hearing was held on the motion on September 18, 2015. At the hearing, the Commonwealth presented the testimony of Pennsylvania State Trooper Jason Zachariah. At the culmination of the evidence being presented, and after review of all relevant case law submitted by both attorneys in this case, the court found that the Commonwealth failed to establish, by a preponderance of the evidence, that the evidence challenged by Defendant was admissible. Accordingly, this court granted the Defendant's motion to suppress on November 19, 2015. On December 23, 2015, the Commonwealth filed an interlocutory appeal. The Commonwealth sets forth the following issue in their Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b):

> The trial court erred in granting the defendant's motion to suppress where the trooper had probable cause to believe that the defendant committed several violations of the motor vehicle code where the defendant made a u-turn at an intersection with a posted no left turn sign, traveled into the right curb lane, then moved from the right curb lane across several solid lane lines without a turn signal, then used a turn signal to move back across several solid lanes lines to eventually turn right.



## II. STANDARD OF REVIEW

As set forth above, the Commonwealth appeals this court's decision that the car stop on August 15, 2014 was made without probable cause or reasonable suspicion. The applicable standard of review in a Commonwealth appeal from an order of suppression is well-settled. Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Ruey*, 586 Pa. 230, 892 A.2d 802 (2006) (citing *Commonwealth v. DeWitt*, 530 Pa. 229, 608 A.2d 1020 (1992)). In making its findings of fact, the suppression court considers the credibility of the witnesses and the weight to be accorded their testimony. *See Commonwealth v. Valentin*, 748 A.2d 711, 713 (Pa. Super. 2000) (citing *Commonwealth v. Quiles*, 619 A.2d 291, 292 (1993) (it is within the sole province of the suppression court to weigh the credibility of witnesses; as part of that process, the suppression court is entitled to believe all, part, or none of the evidence before it)). Moreover, when the Commonwealth appeals from a suppression order, the appellate court follows a clearly defined standard of review and considers only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Deck*, 954 A.2d 603, 606 (Pa. Super. 2008) (quoting *Commonwealth v. Scott*, 916 A.2d 695, 696 (Pa. Super. 2007)). The suppression court's findings of fact bind an appellate court if the record supports those findings. *Id.* The duty of the appellate court is to determine if, in reaching its conclusions of law, the suppression court properly applied the law to the facts. *Id.*

2

## III. DISCUSSION

This Commonwealth challenges his court's ruling on the defendant's motion to suppress. The court respectfully submits that its decision was free from legal error and includes and incorporates the reasons for its ruling herein.[1] *See* Attachment A.

## IV. CONCLUSION

In light of the aforementioned, it is submitted that the decision of this court is fully supported by the record and applicable legal authority, and that there is no merit to the Commonwealth's appeal. It is for the reasons set forth above that this court submits that the decision of this court entered on November 17, 2015 should be affirmed.

BY THE COURT:

_____
GREGORY M. MALLON, JUDGE

---

[1] This opinion will describe the court's factual and legal conclusions in sufficient detail to facilitate effective appellate review. *See Commonwealth v. Winfield*, 835 A.2d 365, 368 (Pa. Super. 2003) (citing *Commonwealth v. Reppert*, 814 A.2d 1196 (Pa. Super. 2002)); Pa.R.A.P. 1925(a) (where trial court did not enter a statement of findings of fact and conclusions of law at the conclusion of the suppression hearing pursuant to Pennsylvania Rules of Criminal Procedure 581(1), appellate court may look to trial court's opinion for its findings of fact and conclusions of law).

**ATTACHMENT A**

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| COMMONWEALTH OF PENNSYLVANIA | NO. 2949-15 |
| V. | |
| JEFFREY CULVER | |

Angelina Freind, Attorney for the Commonwealth
Alex Amoroso, Attorney for the Defendant

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT:

1. In the early morning hours of August 15, 2014, at approximately 1:50 A.M., Jeffrey Culver, the Defendant herein, was heading Northbound on Route 1 in Concord Township within Delaware County, Pennsylvania and stopped at the controlled intersection at State Farm Drive.[2] N.T., 9/16/15, pp. 7-9.

2. Trooper Jason Zachariah, of the Pennsylvania State Police, was on duty and working patrol during that time. *Id.* Trooper Zachariah was in a marked car and in full uniform. *Id.* at 8.

3. At said intersection there is a posted "no left turn" sign warning the motorists travelling northbound that left turns are prohibited. *Id.* at 9.

4. At this same intersection there is no sign posted warning the same motorists driving Northbound that U-turns are prohibited.[3] *Id.* at 20.

5. According to Trooper Zachariah and as seen on his State Police cruiser's Mobile Vehicle Recorder (MVR) the Defendant activated his left turn signal before making the U-turn. *Id.* at 10; *see also* Commonwealth's Exhibit, C-S1, MVR, at 00:04.[4]

---

[2] Trooper Zachariah referred to Defendant's direction of travel as being "Northbound." Though this is a common lapse when describing the directions on Route 1, this court believes that PennDOT maps would describe the Defendant's direction of travel as Eastbound. For clarity and consistency, however, this opinion shall abide by the compass directions recited in the notes of testimony.

[3] At the next controlled intersection (Brinton Lake Road and Route 1) approximately one-quarter of a mile North of State Farm Drive on Route 1 there is a posted No U-Turn sign. Similarly, at the intersection (Applied Bank Blvd and Route 202) that Defendant would have arrived at (see footnote 13 below)—if he had not later done what Trooper Zachariah based his probable cause to stop—there also was a clearly posted No U-turn sign.

[4] The court has recited the time when each event referred to on the MVR can be seen. The court reviewed the MVR many times. Unfortunately, each time it reviewed the particular event on the

5

6. Trooper Zachariah first saw the Defendant at said intersection as he (Trooper Zachariah) was approaching the intersection on Route 1 while travelling Southbound on Route 1.[5]

7. As seen on the MVR, Trooper Zachariah passed by the Defendant as the Defendant was stationary at the intersection of Route 1 and State Farm Road. He testified that he continued driving Southbound and pulled over to the side of the road just prior to Route 202. *Id.* at 9; *see also* Commonwealth's Exhibit, C-S1, MVR, at 00:04-00:19.

8. While watching the Defendant in his (the Trooper's) rear view mirror he saw the Defendant make a U-turn, and begin heading Southbound on Route 1. N.T., 9/16/15, p. 9.

9. As seen on the MVR, the Defendant's left turn signal was activated prior to making the U-turn. *See* Commonwealth's Exhibit, C-S1, MVR, at 00:04-00:05. This fact was conceded at the suppression hearing.

10. At this point in the roadway, there are two (2) southbound lanes, one right [curb] lane and one passing lane. *Id.* at 10. These lanes are separated by broken white lines for a certain distance that can be seen on the MVR. *See* Commonwealth's Exhibit, C-S1, MVR, at 00:06-00:22.

11. Trooper Zachariah testified that after making the U-turn the Defendant entered the right [curb] lane of Route 1 Southbound and without activating his left turn signal traversed from the right [curb] lane across the broken white line and enters the center lane. N.T., 9/16/15, pp 10. This, however, was not captured on any MVR as the MVR only captures what is in front of the police cruiser. [6] This court was not convinced by a preponderance of evidence of these lane changes nor the lack of turn signals.

---

MVR it showed a different time. For example, the Defendant can be seen waiting to make a U-turn at 00:04 seconds on the MVR. The next time the court would review it would be 00:06 seconds on the MVR. The event happened at a single time. Perhaps the variations were a problem with the court's CD player.

[5] It was pointed out on cross-examination of Trooper Zachariah that he had testified at the preliminary hearing that he was travelling Northbound on Route 1 behind the Defendant, that he too made a U-turn at the intersection. N.T., 9/16/15, pp. 15-17. He also testified at the preliminary hearing that while he (Trooper Zachariah) was following the Defendant Northbound on Route 1 he saw the Defendant change lanes without using a turn signal and after doing so the Defendant made the U-turn. *See* N.T. 5/7/15, pp. 9, 15-16; *see also* the Affidavit of Probable Cause. Again, contrary to what is seen on the MVR, Trooper Zachariah also said that the Defendant did not use any turn signal when changing lanes immediately before being pulled over. N.T., 5/7/15, p. 18. When asked about all of these significant discrepancies he explained that there was a "little bit of a clerical error" and that when he wrote his report he was "recollecting off a couple of days after the incident." N.T., 9/16/15, pp. 15-16.

[6] At the Preliminary Hearing Trooper Zachariah does not say that the Defendant enter the "right" lane. N.T. 5/17/15 at p. 17. Candidly when reading the notes of testimony from the Preliminary

12. At a relatively short distance beyond the aforementioned intersection the roadway widens to the left into a "left turn only" lane the right most edge of which is demarcated by a solid white line that continues down to Route 202. *See* Commonwealth's Exhibit, C-S1, MVR, at 00:09-00:36. What is captured on the MVR is that the Defendant's vehicle is completely the left turn only lane as he heads South on Route 1. *Id.* at 00:29

13. While in the "left turn only" lane the Defendant after activating his right turn signal crossed over from the "left turn only" lane and in doing so crossed the right most edge marked by solid white line, then into the center Southbound lane then he crossed over the right most edge of this lane again marked by a solid white line into the Southbound right lane then he crossed into a lane designated for right turns onto Route 202 Northbound.[7] Id. at 00:36-00:46; N.T., 9/16/15, pp. 10-12.

14. Most significantly Trooper Zachariah testified that there were *no* vehicles in the vicinity when the Defendant made *any* of the above described lane changes, except for the Trooper's vehicle that was pulled over on the side of the roadway. *Id.* at 22-23. The Defendant did nothing to endanger or impede any other traffic during this time.

15. The Defendant was pulled over by Trooper Zachariah on Route 202 slightly north of Route 1, after he reached the rightmost lane. *Id.* at 23.

16. Trooper Zachariah testified that he pulled the Defendant over because he observed the Defendant make an illegal U-turn at State Farm Drive. He also testified that after making the U-turn the Defendant travelled from the right [curb] lane of Route 1 South into the passing lane of Route 1 South, without first activating his left turn signal but this court was not convinced by a preponderance of evidence of these lane changes nor the lack of turn signals

17. Trooper Zachariah also said he pulled the Defendant over because the Defendant traversed solid lane lines when moving from the *left* turning lane near Route 1 and Route 202 to the *right* turning lane near said intersection in violation of the Pennsylvania Motor Vehicle Code.

18. On page 23 of the Criminal Complaint filed and attested to by Trooper Zachariah he describes the alleged summary offense that initiated the whole series of events:

    Statute Description (include the name of statue or ordinance):
    **Obedience to Traffic-Control Devices**

---

Hearing and the notes of testimony from the Suppression Hearing it is not clear which lane (right [curb] or center [passing] the Defendant entered after making the U-turn. All that is clear from watching the MVR is that he can only be seen in the "left turn lane" of Route 1 South near the intersection with Route 202.

[7] "Northbound", in this case, is the correct PennDot directional designation.

7

Acts of the accused associated with this Offense:
IN THE, on or about said date, THE DEFENDANT did disobey the instructions of an official traffic-control device, namely, *a no U-turn sign* (emphasis added) placed or held in accordance with the provisions of the PA Vehicle Code at SR0001 at State Farm Dr., Chadds Ford Township, Delaware County, by illegally completing a U-turn, in violation of Section 3111(a) of the PA Vehicle Code.

19. Despite this and as the record will support there was not any "no U-turn sign placed or held in accordance with the provisions of the PA at Vehicle Code SR0001 at State Farm Dr., Chadds Ford Township, Delaware County".

20. The Defendant's vehicle was registered in the State of Florida and the Defendant had a valid Florida driver's license. *See* Affidavit of Probable Cause.

21. Despite the inconsistencies in his Preliminary Hearing Testimony and Suppression hearing testimony and the difference between what he attested to in his Affidavit of Probable Cause and what is seen in the MVR, it is without question that the Defendant made the U-turn and crossed over the solid white lines. Nevertheless, this court does not believe that the complained of U-turn was actually prohibited. It also does not believe pulling over an apparently lost Florida registrant, who found himself in wrong lane on a virtually traffic-less section of roadway, and who put no one in danger by extricating himself, justified the traffic stop.

## CONCLUSIONS OF LAW:

1. Motor Vehicle Statutes because they impose fines and other penalties are criminal in nature and therefore must be construed *strictly. Commonwealth v. Henderson*, 663 A.2d 728, 733 (Pa. Super. 1995).

2. Pursuant to 75 Pa.C.S.A. § 6308, as interpreted and applied by our Supreme and Superior Courts, a vehicle stop based on a perceived vehicle code violation must be supported by probable cause.[8] *See Commonwealth v. Chase*, 599 Pa. 80, 960 A.2d 108 (2008); *Commonwealth v. Landis*, 89 A.3d 694 (Pa. Super. 2014).

3. The Commonwealth alleges in its Affidavit of Probable Cause four (4) summary violations as a foundation of the probable cause to stop the Defendant:

75 Pa.C.S.A. § 3111. Obedience to traffic-control devices
(a) General rule.--Unless otherwise directed by a uniformed police officer or any appropriately attired person authorized to direct, control or regulate traffic, the driver

---

[8] "[A] vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a *Terry* stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses." *Commonwealth v. Landis*, 89 A.3d 694, 703 (Pa. Super. 2014) (internal citations omitted)

8

of any vehicle shall obey the instructions of any applicable official traffic-control device placed or held in accordance with the provisions of this title, subject to the privileges granted the driver of an emergency vehicle in this title

75 Pa.C.S.A. § 3334 Turning movements and required signals
(a) General rule.--Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. § 3301 Driving on right side of roadway
(a) General rule.--Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows. . .

75 Pa.C.S.A. § 3714. Careless driving
(a) General rule.--Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

Although not specifically *charged* the by the Commonwealth it alleges that the Defendant violated a rule of the road by crossing over the solid white lines demarcating the three (3) lanes (left turning land, center [passing] lane, and right [curb]) near the intersection of Route 1 South and Route 202.[9]

4. This court concludes that there was no probable cause to believe a violation of 75 Pa. C.S. § 3111 (a) Obedience to Traffic Control Device existed... This court concludes that the No Left Turn sign at the intersection of Route 1 North and State Farm Drive only prohibits a motorist from turning left onto State Farm Drive.[10]

---

[9] Despite its best efforts this court could not locate any Pennsylvania statute or regulation proscribing the changing of lanes if to do so one must cross over the solid white line defining the edge of the lane of traffic. On the other hand the *Pennsylvania Driver's Manual (Pub 95 (1-15))*, though proscribing "as a general rule" the crossing of solid lines, does allow this "*when making a turn.*" *See* PennDOT, Bureau of Driver Licensing, *Pennsylvania Driver's Manual*, https://www.dot.state.pa.us/Public/DVSPubsForms/BDL/BDL%20Manuals/Manuals/PA%20Dri vers%20Manual%20By%20Chapter/English/PUB%2095.pdf, page 22 (emphasis added). As the Defendant in the instant case crossed the solid white lines in order to make a right turn on to Rt. 202 North, he abided by said manual. Even if there is such a statute or regulation in Pennsylvania proscribing the Defendant's action, still with facts as they existed at the time of lane change, such a minor transgression was insufficient to justify the car stop.

[10] Again, though not a legislatively adopted statute, *Pennsylvania Driver's Manual*, at page 23 Chapter 2 Review Questions visually informs new drivers what a "No U-Turn" looks like and what action is proscribed (Question #4) and what a "No Right Turn" looks like and what action is proscribed (Question #5). The answer to Question #4 does *not* recite "A & C", as the Commonwealth would to ascribe to the "No Left Turn" sign at the intersection in question. Accordingly, this court believes that if PennDOT wanted to prohibit U-turns at this intersection it would have posted a No U-turn sign—like the ones it posted at numerous controlled

9

5. As there was no posted prohibition about making a U-turn at the intersection in question, and because penal statutes must be construed *strictly,* the Defendant did not violate any section of the vehicle code by making said U-turn. He did not turn into State Farm Drive, the street that he would have went into had he made a left turn and proceeded straight.

6. As there was no perceived Vehicle Code violation there could be no probable cause to stop the Defendant for making the U-turn. *See Chase and Landis*

7. After the Defendant made the U-turn and proceeded south on Route 1, Trooper Zachariah said the Defendant made a lane change without first signaling. Again, this court found that these initial signal-less lane changes were not established by a fair preponderance of the evidence. Assuming arguendo that this did happen,[11] the failure to signal when there are no other vehicles in the vicinity is a *de minimus* violation. *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2011) (officer's observation of a vehicle on a deserted four-lane highway crossing the solid white fog-line two or three times by six to eight inches over a distance of approximately one-quarter mile held insufficient to justify a traffic stop.); *Commonwealth v. Whitmyer,* 542 Pa. 545, 553, 668 A.2d 1113, 1117-18 (1995) (erratic lane change, without evidence of a potential hazard to another vehicle or person, held insufficient to justify a traffic stop for a Vehicle Code violation.). *Commonwealth v. Battaglia,* 802 A.2d 652 (Pa.Super 2002) (perceived "erratic driving" in and of itself is not a violation of the Code and, without more, does not provide probable cause to execute a traffic stop). *See also Commonwealth v. Dickey,* 2009 WL 850150, 6 Pa. D. & C. 5th 470 (Pa.Com.Pl. 2009, Berks Co.); *Commonwealth v. Able,* 2014 WL 5431303, (Pa.Com.Pl., Allegheny Co.).

8. Similarly, farther down the roadway while in the "left turn lane" of southbound Route 1 near the intersection of Route 202, the Defendant after signaling his intentions, crossed two lanes of traffic that were marked with solid white lines He did this in order to make a *right* turn onto Route 202. The court finds that, under the circumstances existing at the time at 1:50 A.M.,[12] *where the defendant did not put himself, any motorist, or any pedestrian in any danger,* and where there were no vehicles in the area except for the Trooper who was pulled over on the side of the roadway, if it was a violation (see footnote # 9 above) this too was a *de minimus*

---

intersections at various other nearby intersections, including the one approximately one-quarter of a mile north of State Farm Drive on Route 1. (For the convenience of the Court, attached to this Opinion is a copy of the pertinent pages of the *Pennsylvania Driver's Manual (Pub 95 (1-15) See* Attachment "B").

[11] It was also alleged that the Defendant failed to use his turn signal prior to beginning his U-turn and later when he moved from the "left turn lane" to turn on to Route 202 North. The MVR however shows that did use his turn signal both times.

[12] *See* Affidavit of Probable Cause.

10

violation, similarly insufficient to justify a traffic stop for a Vehicle Code violation.[13]
*Id.*

9. As far as 75 § 3714. Careless driving goes the record is devoid of any probable cause to believe that before he was stopped the Defendant drove in "careless disregard for the safety persons or property".

10. Based upon the testimony and evidence presented, the mandate that penal statutes be construed *strictly*, and the greater protections afforded everyone under Article I, Section VIII of the Pennsylvania Constitution—afforded to even an individual from Florida who may be lost while passing through our great Commonwealth—this court finds that there was insufficient probable cause to stop the Defendant and/or justifiable reason to stop.

11. No motion for reconsideration was filed by the Commonwealth.

---

[13] To avoid doing this the Defendant would have had to remain in the "left hand turn" lane until the traffic signal changed, then make a left on to southbound Route 202, then travel at least one-quarter of a mile on Route 202 until he could make a left across the northbound lane of Route 202, then turn around and get back on Route 202 North to the intersection where he first found himself confined in the "left turn lane". No, the Defendant did what everyone—at some time in their life—has done when they accidentally find themselves in a "turning lane" where they needed to get out of. To deny this statement would strain credulity.

11

**ATTACHMENT B**

# Pennsylvania Driver's Manual

SPEED LIMIT 35

STOP

BIKE ROUTE

NO PASSING ZONE

INTERSTATE 80



**pennsylvania**
DEPARTMENT OF TRANSPORTATION
Bureau of Driver Licensing
www.dmv.state.pa.us

PUB 95 (1-15) English Version

# PAVEMENT MARKINGS

Most roads have permanent markings to show the center of the road, travel lanes or road edges. The markings that show the center of the road are solid or broken lines. These pavement markings also indicate special lane use. Yellow lines divide traffic traveling in opposite directions. Yellow lines are used to mark the center of two-lane roads, and to mark the left edge of divided highways, one-way streets and ramps. Solid white lines divide lanes of traffic traveling in the same direction. Solid white lines are also used to mark the right edge of the road.

**As a general rule, broken traffic lines can be crossed and solid lines cannot, except when making a turn.**
**Some examples of different pavement markings and their meanings follow:**



A single, broken yellow centerline shows the center of a two-way, two-lane road. Passing is permitted on either side, if safe conditions exist. When passing, you must use the lane belonging to oncoming traffic.



A double, solid yellow centerline shows the center of a two-way road. Even if it is not marked with a **NO PASSING** sign, passing by traffic traveling in either direction is not allowed on roads marked in this manner.



The combination of a solid yellow and a broken yellow centerline also shows the center of a two-way roadway. You may pass if the broken line is on your side of the road and safe conditions exist, but you may not pass when a solid yellow line is on your side of the road.



Marking patterns like these may be found on many three-lane or five-lane highways. The outside, solid yellow centerline means you cannot use the center lane for passing. The inside, broken yellow and solid yellow centerlines show vehicles traveling in either direction may use the center lane only to make left turns. Refer to Chapter 3 for more information about using center turn lanes safely.



Multi-lane highways without medians (center dividers) are often marked as shown. Broken white lines show which lanes can be used by vehicles traveling the same way. You may cross the broken white lines to pass, (be sure the passing lane is clear) but you may not cross the double yellow centerlines to pass. Traffic is traveling in the opposite direction in the lane to the left of the yellow centerline.



This pattern is used on most limited access highways with medians (center dividers). The right edge of the road is marked with a solid white line. The left edge of each side is marked by a solid yellow line. The traffic lanes for each side are marked by broken white lines, which may be crossed.

Pavement markings also include words painted on the pavement and arrows that supplement messages posted on regulatory and warning signs. Examples include the words **STOP AHEAD** before an intersection with a **STOP** sign, **YIELD** or white triangles painted across the lane to indicate you must yield to approaching traffic, **SCHOOL** before a school zone, **R X R** before a railroad crossing, **BIKE LANE** for a lane reserved for bicyclists, **ONLY** with a left or right arrow to indicate the lane is reserved for turns only and large white arrows to indicate the direction of travel on one-way streets and highway off-ramps.

## CHAPTER 2 REVIEW QUESTIONS

1. **WHEN YOU SEE THIS SIGN, YOU MUST:**
   A. Stop completely, check for pedestrians, and cross traffic
   B. Slow down without coming to a complete stop
   C. Stop completely and wait for a green light
   D. Slow down and check for traffic



2. **THIS IS THE SHAPE AND COLOR OF A _____ SIGN.**
   A. Stop
   B. Wrong Way
   C. Yield
   D. Do not enter



3. **THIS SIGN MEANS:**
   A. Stop
   B. No U-Turn
   C. Yield
   D. Do not enter



4. **THIS SIGN MEANS:**
   A. No U-Turn
   B. No Turning
   C. No left turn
   D. No right turn



5. **THIS SIGN MEANS:**
   A. No U-Turn
   B. No left turn
   C. No right turn
   D. No turning



6. **THIS SIGN MEANS:**
   A. You must turn left or right
   B. You are approaching a T-intersection
   C. The road that you are on intersects with a divided highway
   D. Designates an overpass above a divided highway



7. **YOU NEED TO USE EXTRA CAUTION WHEN DRIVING NEAR A PEDESTRIAN USING A WHITE CANE BECAUSE:**
   A. He or she is deaf
   B. He or she has a mental disability
   C. He or she is blind
   D. He or she has a walking problem

8. **WHEN DRIVING NEAR A BLIND PEDESTRIAN WHO IS CARRYING A WHITE CANE OR USING A GUIDE DOG, YOU SHOULD:**
   A. Slow down and be prepared to stop
   B. Take the right-of-way
   C. Proceed normally
   D. Drive away quickly

## CHAPTER 2 ANSWER KEY

| | | |
|---|---|---|
| 1. A | 20. A | 39. A |
| 2. C | 21. A | 40. A |
| 3. D | 22. B | 41. D |
| 4. A | 23. D | 42. B |
| 5. C | 24. D | 43. B |
| 6. C | 25. D | 44. B |
| 7. C | 26. A | 45. A |
| 8. A | 27. A | 46. B |
| 9. A | 28. C | 47. C |
| 10. B | 29. A | 48. D |
| 11. D | 30. A | 49. C |
| 12. B | 31. C | 50. D |
| 13. C | 32. C | 51. C |
| 14. C | 33. D | 52. C |
| 15. D | 34. C | 53. D |
| 16. A | 35. C | 54. C |
| 17. A | 36. A | 55. C |
| 18. A | 37. C | 56. A |
| 19. A | 38. B | 57. A |