J-S35010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES WATTS :
:
Appellant : No. 3721 EDA 2017

Appeal from the Judgment of Sentence October 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005858-2016

BEFORE:   OLSON, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                          **FILED JULY 12, 2019**

Appellant, James Watts, appeals from the judgment of sentence entered

on October 17, 2017.  We affirm.

On appeal, Appellant claims that the trial court erred when it denied his

motion to suppress.  Because the Commonwealth prevailed at the suppression

hearing, we "consider only the Commonwealth's evidence and so much of the

evidence for the defense as remains uncontradicted when read in the context

of the record as a whole."  **Commonwealth v. Russo**, 934 A.2d 1199, 1203

(Pa. 2007) (quotations and citations omitted).  Further, "the record" refers to

"the evidentiary record that was created at the suppression hearing."

**Commonwealth v. Cruz**, 166 A.3d 1249, 1254 (Pa. Super. 2017); **In re**

**L.J.**, 79 A.3d 1073 (Pa. 2013).  Viewed in this manner, the facts are as follows.

At the time of the August 18, 2017 suppression hearing, Philadelphia

Police Officer Richard Nicoletti was a 28-year veteran of the Philadelphia Police

_____
*   Retired Senior Judge assigned to the Superior Court.

force and a 23-year veteran of the Philadelphia Police Department's Narcotics Field Unit. N.T. Suppression Hearing, 8/18/17, at 5. Officer Nicoletti testified that, at around 4:00 p.m. on June 1, 2016, he and his partner were on-duty, but in plain clothes and sitting in an unmarked vehicle that was parked on the 400 block of St. Vincent Street. *Id.* at 6-7 and 19. The officer testified that the 400 block of St. Vincent Street is a residential block and that he and his fellow officers were "[c]onducting an investigation of a target location . . . in reference to a drug complaint." *Id.*

Officer Nicoletti testified:

> I was watching the target location . . . and about 4:10 p.m., [Appellant] drove up westbound on St. Vincent [Street] and pulled over just before Oakley Street. He actually pulled over almost directly across the street from me. I was facing eastbound on the other side of the street, he was facing westbound on St. Vincent.
>
> [Appellant] had his window down and he was the only occupant in the car. And just for a note, he was not the target of my investigation or why I was there in the first place.
>
> Right at that time, a white male came out wearing a white T-shirt and tan shorts out of a house to the right of me, which would've been on the south side of St. Vincent Street. He approached [Appellant's] car, got into the passenger side. At that time, I could see [Appellant] was holding a clear sandwich baggie.
>
> Now, when he had crossed my vehicle, the white male, he actually walked directly in front of my truck. I was in a pickup truck. He was holding money. When he got into the passenger side, [he and Appellant] spoke very briefly. . . . The white man handed that money he had held in his hand to [Appellant, Appellant] reached into that clear sandwich baggie, appeared to give small items to the white male, the white male got out and started walking back across the street

into the house.  Almost at the same time, [Appellant] then pulled off westbound on St. Vincent and went one block and then southbound on Shelbourne Street, which is the next block over, west from Oakley.

At that point, I had other officers in the area, Officer Bogan, Officer Fitzgerald, and I managed to turn around, myself along with Officer Bogan and Fitzgerald and Officer Sumter, followed [Appellant's] vehicle, which was a silver Monte Carlo.

We followed him south on Shelbourne, and then he got stuck in traffic right at Longshore, where Longshore kind of cuts into another street there.

And at that point, myself and the other officers exited our vehicle to conduct an investigation. . . .  So, we got out of our cars, walked up [to Appellant's vehicle, and] identified ourselves as officers.  . . .  [When] we approached [Appellant's] vehicle, . . . in the cup holder right next to [Appellant], I could observe a clear sandwich baggie and U.S. currency in the cup holder.

Officer Bogan actually made a physical recovery of those items from the passenger side of the vehicle.  And the clear baggie did contain four clear packets of crack cocaine and one small pill.  The money was counted and totaled, I believe it was $468[.00] U.S. currency.

*Id.* at 7-9 and 15 (some capitalization omitted).

Officer Nicoletti specifically testified that, based upon his experience, he "believed [he witnessed] a narcotics transaction" between Appellant and the white male.  *Id.* at 16.  Officer Nicoletti also testified that he witnessed "thousands" of "hand-to-hand transaction[s]" in his career as a Philadelphia Police Officer and personally experienced "that type of transaction [himself] making undercover purchases."  *Id.* at 10.  Further, he testified that, "over

- 3 -

the years," he made "maybe [a] half [] dozen" narcotics arrests in "[a] one to two block radius of" the 400 block of St. Vincent Street. *Id.* at 11.

Appellant was arrested and charged with possession of a controlled substance with the intent to deliver ("PWID") and possession of a controlled substance.[1] Prior to trial, Appellant moved to suppress the evidence on grounds that "the officers did not have probable cause to stop and arrest [Appellant], nor did they have reasonable suspicion of criminal activity to warrant the stop of [Appellant's] car." *See id.* at 4.

On August 18, 2017, the trial court held a suppression hearing, where it heard the above-summarized evidence. Moreover, during the hearing, Appellant's counsel questioned Officer Nicoletti and intimated that, since the officer did not actually see the contraband being passed between Appellant and the white male, it was possible that Appellant was simply handing the white male a piece of candy from the clear sandwich baggie. Officer Nicoletti testified:

> Let me go back [to] when you say a piece of candy[.] I've been doing narcotics investigations a long time, I've never seen anybody get a piece of candy like that ever.

N.T. Suppression Hearing, 8/18/17, at 17.

At the conclusion of the hearing, the trial court denied Appellant's suppression motion and Appellant proceeded to a bench trial. The trial court found Appellant guilty of PWID and simple possession and, on October 17,

---

[1] 35 P.S. §§ 780-113(a)(30) and (16), respectively.

2017, the trial court sentenced Appellant to serve a term of one to three years in prison, followed by five years of probation, for the PWID conviction. N.T. Sentencing, 10/17/17, at 20.

Appellant filed a timely notice of appeal. He makes one claim on appeal:

> Whether the court erred in failing to grant the motion to suppress the physical evidence?

Appellant's Brief at 4 (some capitalization omitted).

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); **see also** Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their

- 5 -

testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006).

As we have explained, "[t]he Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures.  To safeguard this right, courts require police to articulate the basis for their interaction with citizens in [three] increasingly intrusive situations." ***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012).  Our Supreme Court has categorized these three situations as follows:

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond.  The second category, an investigative detention, derives from ***Terry v. Ohio*** and its progeny:  such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest.  The final category, the arrest or custodial detention, must be supported by probable cause.

***Commonwealth v. Smith***, 836 A.2d 5, 10 (Pa. 2003).

Appellant claims that the trial court erred when it denied his suppression motion because the police did not have reasonable suspicion to subject him to an investigatory detention or probable cause to search his vehicle.  We will analyze the claims separately.

First, Appellant claims that, when the police initially approached his vehicle, the police subjected him to an investigatory detention; he claims that

the police did not possess the requisite reasonable suspicion to subject him to that investigatory detention. Appellant's Brief at 11. This claim fails.

We agree with the trial court that Appellant was subjected to an investigatory detention when the four officers initially approached his vehicle on foot, from both sides, while the vehicle was stopped in traffic, and identified themselves as police officers. *See* Trial Court Opinion, 12/7/18, at 7. At that point, "a reasonable person in Appellant's position would not have felt free to leave." *See Commonwealth v. Parker*, 161 A.3d 357, 364 (Pa. Super. 2017). Since Appellant was subjected to an investigatory detention at this point, the Commonwealth was required to prove by a preponderance of the evidence that the detention was at least supported by reasonable suspicion. Our Supreme Court has explained:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011) (quotations, citations, and emphasis omitted).

Here, the trial court properly concluded that the officers (at least) had reasonable suspicion to initially stop Appellant. To be sure, Officer Nicoletti

testified that he witnessed the following: Appellant parked his vehicle on a residential block "almost directly across the street from" the officer; when Appellant parked his vehicle, he "had his window down and he was the only occupant in the car;" almost immediately after Appellant parked his vehicle, "a white male came out . . . of a house" visibly holding money in his hand; the male got into the passenger side of Appellant's car, spoke briefly with Appellant, handed Appellant the money, and, after he handed Appellant the money, Appellant "reached into [a] clear sandwich baggie" and handed the male what appeared to be "small items;" and, after the transaction concluded, the male exited Appellant's vehicle, walked back towards his house, and Appellant drove away. N.T. Suppression Hearing, 8/18/17, at 7-9 (some capitalization omitted). Further, Officer Nicoletti testified that: he is a 23-year veteran of the Philadelphia Police Department's Narcotics Field Unit; he has witnessed "thousands" of "hand-to-hand transaction[s]" in his career as a Philadelphia Police Officer and participated in this type of transaction while making undercover purchases; and, based upon his experience, he "believed [he witnessed] a narcotics transaction" between Appellant and the white male. *Id.* at 5, 10, and 16.

Given these specific and articulable facts, we agree that "an objectively reasonable police officer would have reasonably suspected" that Appellant sold narcotics to the male. *Holmes*, 14 A.3d at 95 and 96. As such, we agree that the investigatory detention was properly supported by reasonable suspicion. Appellant's first claim on appeal thus fails.

Next, Appellant claims that the search of his vehicle was unsupported by probable cause. *See* Appellant's Brief at 12. This claim also fails.

As we recently explained:

> In [***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014) (plurality)], the Supreme Court of Pennsylvania reinterpreted Article I, § 8 [of the Pennsylvania Constitution] as paralleling the Fourth Amendment's protections against warrantless searches of automobiles, because "it is desirable to maintain a single, uniform standard for a warrantless search of a motor vehicle, applicable in federal and state court, to avoid unnecessary confusion, conflict, and inconsistency in this often-litigated area." [***Gary***, 91 A.3d at 138]. Hence, Pennsylvania now follows federal law on this issue; "where police possess probable cause to search a car, a warrantless search is permissible." ***In re I.M.S.***, 124 A.3d 311, 317 (Pa. Super. 2015).

***Commonwealth v. Davis***, 188 A.3d 454, 457-458 (Pa. Super. 2018) (footnote omitted); *see also* ***Pennsylvania v. Labron***, 518 U.S. 938, 940 (1996) ("[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment [] permits police to search the vehicle without more").

As to the probable cause standard, we have explained:

> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search

> must be more than a mere suspicion or a good faith belief on the part of the police officer.
>
> The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity.

***Commonwealth v. Runyan***, 160 A.3d 831, 837 (Pa. Super. 2017) (citations, emphasis, and some quotations omitted); ***see also Maryland v. Pringle***, 540 U.S. 366, 370 (2003) ("the probable[] cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act") (quotations and citations omitted).

Our Supreme Court's opinion in ***Commonwealth v. Thompson***, 985 A.2d 928 (Pa. 2009), guides our resolution of this matter. In ***Thompson***, our Supreme Court applied the probable cause standard to a factual scenario similar to the one at bar. The ***Thompson*** Court summarized the relevant facts of its case:

> On January 21, 2005, in the evening, Philadelphia Police Officer Orlando Ortiz was on duty in the 2400 block of Leithgow Street. Officer Ortiz knew the neighborhood as a high crime area in which narcotics, and specifically heroin, regularly were sold. The area was designated by the Philadelphia Police Department as an "Operation Safe Streets" neighborhood. Officer Ortiz, a nine-year veteran of the police force, and his partner, Officer Correa, were in plainclothes and driving an unmarked vehicle. Officer Ortiz saw a car parked by the sidewalk and observed [the defendant] standing in the street by the driver's side door. Officer Ortiz watched [the defendant] hand the male driver some money and saw the driver give [the defendant] a small object in return. Based on what he saw on the street and what he knew, including the fact that he had made several

hundred narcotics arrests of this very type, Officer Ortiz believed the men were engaged in a drug transaction. Officer Ortiz stopped [the defendant] and recovered from his pocket a packet of heroin. Officer Correa approached the driver and ultimately recovered two packets of heroin from his hand and an additional 14 packets from his person.

*Id.* at 930.

The Commonwealth charged the defendant with possession of a controlled substance and the defendant filed a motion to suppress the physical evidence against him, claiming that the police "lacked the probable cause necessary to support the search and seizure." *Id.* The trial court denied the motion and the defendant was found guilty of possessing a controlled substance. After this Court affirmed the defendant's judgment of sentence, the Pennsylvania Supreme Court granted allowance of appeal to determine "[w]hether the initial seizure and immediately ensuing search lacked probable cause." *Id.* at 931.

In affirming the defendant's judgment of sentence, the ***Thompson*** Court reiterated that a probable cause analysis demands a court consider the totality of the circumstances. *Id.* Thus:

[t]he time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important.

*Id.* at 932, *quoting* ***Commonwealth v. Lawson***, 309 A.2d 391, 394 (Pa. 1973).

Moreover, the **Thompson** Court held that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." **Thompson**, 985 A.2d at 935. However, as to the factor of officer experience, the Supreme Court cautioned "that an officer's testimony in this regard shall not simply reference training and experience abstract from an explanation of their specific application to the circumstances at hand." **Id.** (quotations and citations omitted). Rather, the Court held, "the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." **Id.** (quotations and citations omitted).

In applying the law to the facts of the case before it, the **Thompson** Court held that the police had probable cause to arrest the defendant. The Court explained:

> The evidence at the suppression hearing established that Officer Ortiz was a nine-year veteran of the police force who was on undercover patrol in a high crime area that had been designated by the Philadelphia Police Department as an Operation Safe Streets neighborhood. In addition to this designation by the department, Officer Ortiz was personally familiar with heroin sales activity in the neighborhood, heroin packaging, and hand-to-hand drug exchanges on the street. In drawing a nexus between his experience and the observation he made, Officer Ortiz testified that he had seen this type of "exchange done several hundred times" on the street and had made several hundred narcotics arrests of this very type.
>
> Because we have determined that a police officer's experience may be fairly regarded as a relevant factor in determining probable cause, and due to the presence of additional factors in support of Officer Ortiz's conclusion that he was witnessing a drug transaction, we find no error in the Superior Court's conclusion that probable cause was present

- 12 -

in this case. We do not base our decision solely on Officer Ortiz's experience and the connection he articulated between that experience and what he observed. We also rely on the fact that the transaction at issue occurred in the nighttime hours, on the street, in a neighborhood that the police department selected for the "Operation Safe Streets" program.

*Id.* at 936-937 (footnotes omitted).

Similar to **Thompson**, the totality of the circumstances in the case at bar establishes that the police had probable cause to believe that the clear plastic sandwich baggie in Appellant's vehicle contained contraband. First, as required by **Thompson**, Officer Nicoletti "demonstrate[d] a nexus between his experience and the search, arrest, or seizure of evidence." **See id.** at 935 (quotations and citations omitted). Certainly, during the suppression hearing, Officer Nicoletti testified that: he was a 28-year veteran of the Philadelphia Police force and a 23-year veteran of the Philadelphia Police Department's Narcotics Field Unit; he had witnessed "thousands" of "hand-to-hand transaction[s]" in his career as a Philadelphia Police Officer and participated in this type of transaction while making undercover purchases; and, based upon this experience, he believed that this particular hand-to-hand transaction between Appellant and the white male was a narcotics transaction. N.T. Suppression Hearing, 8/18/17, at 5, 10-11, and 16.

As already explained above, supporting Officer Nicoletti's belief were the following facts: Appellant parked his vehicle on a residential (not a commercial) block "almost directly across the street from" the officer; when Appellant parked his vehicle, he "had his window down and he was the only

occupant in the car;" almost immediately after Appellant parked his vehicle, "a white male came out . . . of a house" visibly holding money in his hand; the male got into the passenger side of Appellant's car, spoke briefly with Appellant, handed Appellant the money, and, after he handed Appellant the money, Appellant "reached into [a] clear sandwich baggie" and handed the male what appeared to be "small items;" and, after the transaction concluded, the male exited Appellant's vehicle, walked back towards his house, and Appellant drove away. *Id.* at 7-9 and 15 (some capitalization omitted). Further, immediately before the officers seized the contraband from Appellant's vehicle, the officers observed the clear sandwich baggie and a large amount of money – $468.00 – sitting in the vehicle's cup holder. *Id.* at 9.

It is true that Officer Nicoletti did not testify that the 400 block of St. Vincent Street was a "high crime area," as in *Thompson*. Nevertheless, Officer Nicoletti did testify that, at the time he witnessed the transaction, he was on the block because he was "[c]onducting an investigation of a target location . . . in reference to a drug complaint" and he also testified that, over his 28-year career as a police officer, he made "maybe [a] half [] dozen" narcotics arrests in "[a] one to two block radius of" the 400 block of St. Vincent Street. *Id.* at 6 and 11-12. Further, although the transaction in *Thompson* occurred at night, while the one in the instant case occurred during the afternoon, this distinction is not dispositive, as probable cause must be determined by viewing the totality of the circumstances. The totality of the

circumstances in this case includes the facts that: the transaction occurred on a residential (and not a commercial) street; Appellant kept the suspected contraband in a clear plastic baggie, in his vehicle, right next to a large amount of money; the fact that, immediately after Appellant parked on the street, the white male exited his house with money visibly in hand and entered Appellant's vehicle; the transaction occurred in a quick, hand-to-hand manner; the transaction consisted of Appellant reaching into the clear plastic baggie and exchanging what appeared to be small items for money; immediately after the transaction, the male exited Appellant's vehicle and Appellant drove away; and, Officer Nicoletti's experienced belief – from witnessing "thousands" of "hand-to-hand transaction[s]" in his career as a Philadelphia Police Officer and participating in these types of transactions while making undercover purchases – that this particular hand-to-hand transaction between Appellant and the other male was a narcotics transaction.

In accordance with **Thompson**, we conclude that, prior to the seizure, the totality of the circumstances in this case establishes that the police had probable cause to believe that the clear plastic sandwich baggie in Appellant's vehicle contained contraband. Therefore, we conclude that the police lawfully seized the contraband from the vehicle and that the trial court properly denied Appellant's suppression motion. Appellant's claim to the contrary, thus, fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/12/19