J-S02016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE MELTON | : | |
| | : | |
| Appellant | : | No. 1127 EDA 2020 |

Appeal from the Judgment of Sentence Entered March 4, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0001908-2017.

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.: Filed: April 22, 2021

Andre Melton appeals the judgment of sentence imposed following his convictions for carrying a firearm without a license and carrying a firearm on the public streets of Philadelphia without a license.[1] We affirm.

The relevant factual and procedural history can be summarized as follows. On the evening of February 14, 2017, Philadelphia police officers were conducting a routine traffic patrol when they encountered a blue BMW driving in a high crime area known for frequent gun-point robberies and vehicle thefts. The officers checked the subject vehicle's license plate with the Pennsylvania Department of Motor Vehicles ("DMV") but received no information regarding the vehicle or its owner. The vehicle did not have any

_____

[1] **See** 18 Pa.C.S.A. §§ 6106(a)(1), 6108.

temporary registration tags. The officers followed the vehicle for a few blocks and observed no violations of the Vehicle Code. However, they decided to initiate a traffic stop to investigate the lack of proper registration, given the frequency of stolen vehicles in the area.

The vehicle had three occupants, and Melton was seated in the front passenger seat. The officers approached the vehicle, with Officer John Godlewski approaching on the passenger side of the vehicle, and his partner approaching on the driver's side of the vehicle. As he approached, Officer Godlewski observed Melton reach down between his legs and then sit upright again. When Officer Godlewski shined his flashlight into the vehicle, he observed a handgun on the floor of the vehicle between Melton's feet, halfway under his seat. Melton was arrested and charged with the above-referenced firearm offenses.

Melton filed a motion to suppress the firearm on the basis that the officers lacked reasonable suspicion to stop the vehicle. Following a suppression hearing, the trial court determined that the officers had reasonable suspicion to stop the vehicle to check its registration status, given the lack of DMV information and the frequency of stolen vehicles in the area. On this basis, the trial court denied suppression. The matter proceeded to a non-jury trial, after which the court found Melton guilty of both firearm

offenses.[2]  Melton filed a post-verdict motion which the trial court denied.  On March 4, 2020, the trial court sentenced Melton to one to two years in prison on each count, to be served concurrently.  Melton filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Melton raises the following issues for our review:

1. The trial court erred when it denied the motion to suppress which argued that the police officers lacked the requisite level of probable cause or reasonable suspicion to stop, detain and question [Melton].

2. The evidence was lacking (both in weight and sufficiency) to attribute [Melton's] constructive possession of the firearm which was recovered by the police in a car with multiple people present.  Specifically, [Melton] was in a car which was not registered to him, the gun was found in a common area of the car and there were two other men in the car who could have accessed the gun.

Melton's Brief at 5.

Melton's first issue challenges the trial court's denial of Melton's motion to suppress the firearm.  On appeal from the denial of a suppression motion:

Our standard of review . . . is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

_____

[2] The trial was conducted by a different judge than the judge who conducted the conducted the suppression hearing.

- 3 -

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted). Additionally, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." *Commonwealth v. Bush*, 166 A.3d 1278, 1281-82 (Pa. Super. 2017) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Id*. at 1282 (citation omitted).

"The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the [Vehicle Code] is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." *Commonwealth v. Holmes*, 14 A.3d 89, 94 (Pa. 2011) (citation omitted).

A police officer's statutory authority to stop a motor vehicle is codified in Section 6308(b) of the Vehicle Code, which provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

The Vehicle Code further provides that, "no person shall drive or move and no owner shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth." 75 Pa.C.S.A. § 1301(a).

Where, as here, a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015).[3] Reasonable suspicion is a relatively low standard and depends on the information possessed by police and its degree of reliability based upon the totality of the circumstances. *See Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010). In order to justify the stop, an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the Vehicle Code. *See Holmes*, 14 A.3d at 95. The standard for assessing whether a given set of observations constitutes reasonable suspicion is an objective one. *See id*.

Melton argues that police lacked reasonable suspicion to stop the vehicle. Melton points out that the officers observed no Vehicle Code violations, and had no specific information about the vehicle or the occupants that would justify pulling it over. Melton asserts that, while the area may be

---

[3] If, on the other hand, it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. *See Salter*, 121 A.3d at 993.

- 5 -

known for stolen vehicles, the police admitted that they had no reports for stolen cars on that specific night. Therefore, Melton argues, the only reason to justify the stop was that no information came back for the vehicle from the DMV. Melton claims that this is not an indication that the vehicle was stolen or that any criminal activity was afoot so as to justify the traffic stop.

The trial court considered Melton's suppression challenge and concluded that it lacked merit. The court reasoned:

> Here, . . . [o]fficers . . . were patrolling an area with a high incidence of stolen vehicles. They observed the vehicle which [Melton] occupied, conducted a routine registration check with the DMV, and received no information about the vehicle's registration or owner.
>
> [These] facts gave the officers a reasonable suspicion that a violation of the [Vehicle Code], or possibly a stolen vehicle situation, was afoot. The [Vehicle Code] makes it unlawful to "drive or move . . . upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration." 75 Pa.C.S.A. § 1301(a). After the DMV check yielded no vehicle registration information, the officers had a reasonable suspicion that a [Vehicle Code] violation was occurring, and/or that possibly someone was driving the vehicle without the owner's permission. Only by stopping the vehicle could the officers resolve their suspicions.

Trial Court Opinion, 8/13/20, at 8 (emphasis and citations to the record omitted).

Here, the suppression record supports the trial court's factual findings. Officer Godlewski testified that, at the time of the stop, the officers were conducting a routine traffic patrol in an area known for frequent vehicle thefts. *See* N.T., 10/20/17, at 6-10. Melton was riding in the vehicle the officers

- 6 -

observed in this area. *Id*. When the officers ran the license plate through the DMV database, they received no registration information on the vehicle. *Id*. at 9-10. The vehicle had no temporary registration tags. *Id*. Consequently, the officers possessed specific and articulable facts leading to the conclusion that an offense may have been taking place in front of them—specifically, that the vehicle being operated on the Pennsylvania road was either not registered in Pennsylvania or stolen. As such, the totality of the circumstances, viewed from the standpoint of an objectively reasonable police officer, supported a reasonable belief that a violation of the Vehicle Code was taking place. Thus, the stop to investigate was justified and Melton's first issue warrants no relief.

In his second issue, Melton contends both that the evidence was insufficient to establish his guilt and that the verdicts of guilt were against the weight of the evidence. These are distinctly different legal issues which we must address separately.[4]

We first address Melton's sufficiency challenge. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.

---

[4] We note that Melton should have identified and discussed these issues separately in his statement of questions presented and in the argument section of his brief. *See* Pa.R.A.P. 2116, 2119.

Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the [fact-finder], which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

A person commits the offense of firearms not to be carried without a license when he or she "carries a firearm in any vehicle . . . without a valid and lawfully issued license under this chapter . . . ." 18 Pa.C.S.A. § 6106. Further, a person commits the offense of carrying firearms on public streets or public property in Philadelphia when he or she "carr[ies] a firearm, rifle or shotgun at any time upon the public streets or upon any public property" without a license to carry a firearm or an exemption from such licensing. *Id*. § 6108.

Possession of a firearm is an essential element of both of these offenses. The Commonwealth may prove this element not only by evidence that the defendant actually possessed the firearm, but also by evidence sufficient to show that the defendant constructively possessed the firearm. **See Commonwealth v. McClellan**, 178 A.3d 874, 878-79 (Pa. Super. 2018). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. **Commonwealth v. Mudrick**, 507 A.2d 1212, 1213 (Pa. 1986). With respect to constructive possession, this Court has explained:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession. . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence. The requisite knowledge and intent may be inferred from the totality of the circumstances.

**McClellan**, 178 A.3d 878 (internal citations omitted).

Evidence that the defendant has been in a vehicle where a firearm is found is not sufficient by itself to prove constructive possession if the firearm is in a location over which the defendant lacks control or there is no evidence that the defendant knew that the firearm was there. **Commonwealth v. Armstead**, 305 A.2d 1, 2 (Pa. 1973). However, constructive possession may be found in one or more actors if they are occupant of the same vehicle and

the item at issue is located is an area of joint control and equal access. *See*

*Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011).

Melton argues that the prosecution was unable to prove that he had exclusive control over the firearm. Melton claims that he was one of three individuals in the vehicle, and he was neither the driver nor the owner of the vehicle. While Melton concedes that he was observed making movements in the area where the firearm was recovered, he argues that there was no additional evidence that linked the gun to him or demonstrated that he exercised control over the weapon. According to Melton, the main factors in determining that he possessed the firearm were his movements and close proximity to the gun. Melton maintains that these factors alone do not provide proof beyond a reasonable doubt that he possessed the firearm. He claims it was equally likely that, upon being pulled over by police, the driver of the vehicle told Melton that he had a gun hidden under the front passenger seat and asked Melton to make sure it was hidden, or the individual in the back seat of the vehicle slid the gun under Melton's seat.

Melton suggests that the Commonwealth must prove some additional factor linking him to the firearm, such as finding the firearm within his personal effects or in a place where only he had access, or observing him acting suspiciously before or during the arrest. Melton maintains that none of these factors are present in the instant case. While he concedes that the gun was found in plain view, he points out that this was not his car and all three men

had access to the area of the car where the gun was found. Melton further argues that the driver of the vehicle had access to the car long before he did, and there was no evidence to show how long the gun had been inside that vehicle.

The trial court considered Melton's sufficiency challenge and determined that the evidence was sufficient to establish that he constructively possessed the firearm. The trial court reasoned:

> The evidence at trial established that [Melton] was the front-seat passenger in a vehicle containing two other occupants, including the driver. After pulling over the vehicle for a possible [Vehicle Code] violation, Officer Godlewski exited the patrol car and approached the passenger side of the vehicle. While walking toward the vehicle, Officer Godlewski observed [Melton] duck down and reach between his legs. When Officer Godlewski reached the side of the vehicle, he shined his flashlight inside and observed a black handgun "on the floor in between [Melton's] legs "about halfway under the seat and within reaching distance." (N.T. 6/20/19, at pgs. 12-14, 20).

Trial Court Opinion, 8/13/20, at 10.

Here, viewing the record in the light most favorable to the Commonwealth, as verdict winner, and giving the prosecution the benefit of all reasonable inferences, we conclude that there was sufficient circumstantial evidence for the trial court as trier of fact to find that Melton constructively possessed the firearm between his feet. The approaching officer observed Melton, who was sitting in the front passenger seat of the vehicle, reach down under his seat and then sit upright again. *See* N.T., 6/20/19, at 12. When the officer shined a flashlight on the area below Melton's seat, he observed a

firearm between Melton's legs, partially under his seat. **See id**. This evidence, without more, was sufficient to support an inference that Melton had the power to control and the intent to exercise control over the firearm; this was sufficient to prove constructive possession of the firearm. **See Commonwealth v. Bergen**, 142 A.3d 847, 852 (Pa. Super. 2016) (holding that, where appellant was in the front passenger seat of a vehicle, and observed bending forward, the jury could reasonably infer that appellant had access to and control over the area beneath the front passenger seat where the firearm was found).

The fact that Melton was not the owner of the vehicle, or that the firearm may have been owned by another passenger in the vehicle did not render the evidence insufficient to prove Melton's constructive possession of the firearm, because more than one person may have constructive possession of an item at the same time. **See Johnson**, 26 A.3d at 1094 (recognizing that one or more individuals may be deemed to have constructive possession of contraband where the item is in an area of joint control and equal access); **see also Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa. Super. 1996) (holding that the fact that another person may also may have control and access does not eliminate the defendant's constructive possession, as two

actors may have joint control and equal access and thus both may constructively possess contraband).[5]

Here, the gun was found directly under the seat in which Melton was sitting as if placed there by Melton. While there were two other individuals in the car, neither had as much access to the gun as did Melton. *See Commonwealth v. Stembridge*, 579 A.2d 901, 905 (Pa. Super. 1990) (finding constructive possession established where the "[a]ppellant's access to and control over the area in which the contraband was found was greater than that of the driver and other passenger"); *see also Commonwealth v. Cruz Ortega*, 539 A.2d 849 (Pa. Super. 1988) (affirming appellant's conviction of possession of contraband where police observed appellant, who was sitting in the front passenger's seat, leaning over his seat under which contraband was thereafter found).

In short, the totality of the circumstances supports the contention that Melton was aware of the firearm and more likely than not that he had the

_____

[5] Melton's reliance on *Commonwealth v. Boatwright*, 453 A.2d 1058 (Pa. Super. 1982), is unavailing. In *Boatwright*, officers approached a vehicle in response to a call regarding suspicious men. The officers observed appellant in the front passenger seat of the vehicle. Appellant moved towards his left rear, at which time officers ordered him out of the car. A gun was visible on the left rear floor of the vehicle. This Court reversed appellant's conviction for possession of the firearm, finding that appellant's mere presence at the scene and leftward movement were insufficient to prove constructive possession. In the instant case, however, Melton was seated in the front passenger seat at the time the gun was discovered, and the gun was located directly between his feet, within easy reach. Thus, *Boatwright* is factually distinguishable.

ability and intention to control it. Because the evidence was sufficient to prove that Melton constructively possessed the firearm and Melton does not dispute the other elements of the firearm offenses for which he was found guilty, his sufficiency challenge merits no relief.

We turn next to Melton's weight challenge. Our standard of review of a challenge to the weight of the evidence is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted). This Court may not substitute its judgment for that of the fact-finder as to credibility issues or the weight to be given to evidence. *Commonwealth v. Furness*, 153 A.3d 397, 404 (Pa. Super. 2016). This standard applies even when the trial judge rendered the verdict at issue as the finder of fact. *See, e.g.*, *Commonwealth v. Konias*, 136

A.3d 1014, 1023 (Pa. Super. 2016) (applying the above standards to a weight challenge following a bench trial).

Further, a challenge to the weight of the evidence concedes that sufficient evidence supports the verdict. *Widmer*, 744 A.2d at 751. Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

Here, Melton does not indicate in his weight challenge that certain evidence was so clearly of greater weight than other evidence that the verdicts of guilt shock one's sense of justice. Instead, Melton merely presents a single argument for his weight and sufficiency challenges; namely, that the Commonwealth failed to prove that he constructively possessed the firearm. As indicated above, a claim that an element of the offense went unproven at trial implicates the sufficiency of the evidence, not the weight. Thus, as Melton failed to properly advance his weight of the evidence claim, we find that it is without merit.

Moreover, the trial court considered Melton's weight challenge and concluded that the verdict of guilt did not shock one's conscience. The court reasoned:

> The same evidence defeating [Melton's] sufficiency challenge defeats his weight challenge. Officer Godlewski testified that the firearm was "literally right between" [Melton's] legs "about halfway under the seat" and "within reaching distance."

> This is the same area where [Melton] had "ducked down" and "reached" and Officer Godlewski approached the vehicle. (N.T. 6/20/19, at pgs 12-14).
>
> This [c]ourt deemed Officer Godlewski's testimony to be credible, and [Melton] presented no contradictory evidence or testimony that clearly were of greater weight than the officer's testimony. Because the credible evidence decidedly supports this [c]ourt's finding of constructive possession, [Melton's] challenge to the weight of the evidence is meritless.

Trial Court Opinion, 8/13/20, at 11.

As discussed above, we give the gravest consideration to the findings and reasons advanced by the trial court when reviewing its determination that the verdict is not against the weight of the evidence. In this matter, we discern no abuse of discretion by the trial court in arriving at its determination that the verdicts of guilt did not shock one's conscious. Accordingly, Melton's weight challenge merits no relief.

Having concluded that none of Melton's issues entitle him to relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>4/22/21</u>